UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-CV-00045-RLV

| RONALD & SUSAN GAIL RUTHFIELD, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | ORDER |
| | ) | |
| PNC BANK NATIONAL ASSOCIATION, successor by merger to National City Real Estate Services, LLC as successor by merger to National City Mortgage, Inc., | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiffs Ronald Ruthfield and Susan Gail Ruthfield's, Motion to Remand (Doc #6) and accompanying Memorandum of Law in Support (Doc #6-1) filed April 19, 2011 and Defendant National City Mortgage, Inc.'s Response to Motion to Remand (Doc# 9) filed May 6, 2011. This matter is now ripe for disposition.

### I. Background

This case arises out of the Complaint filed by Plaintiffs Ronald Ruthfield and Gail Susan Ruthfield, *pro se*, seeking to quiet title to real property located in Watauga County, NC. Compl. ¶1. Plaintiffs acquired title to this property in August 1999 and recorded their deed in the Watauga County Courthouse. *Id.* ¶ 6. In May 2004, National City Mortgage, Inc. ("National

1

City"), Defendant, recorded a Deed of Trust on Plaintiffs' residence securing a promissory note in principal amount of $225,800.[1] *Id.* ¶ 7.

On October 1, 2009, Plaintiffs received written notice from PNC Bank National Association ("PNC Bank") stating that, effective November 7, 2009, National City would become part of PNC Bank and that PNC Mortgage, a division of PNC Bank, would be the servicer of Plaintiffs' Deed of Trust and Note. *Id.* ¶ 10. Since that time, Plaintiffs have been making payments to PNC Mortgage. *Id.*

Plaintiffs believe that in August 2005, PNC Bank filed a three billion dollar offer with the U.S. Securities and Exchange Commission to sell security-backed mortgage interests on or after the issuance of Plaintiffs' Note and Deed of Trust. *Id.* ¶ 12. Plaintiffs believe that their Note and Deed of Trust were sold through a form of Mortgage and Note securitization. *Id.* ¶13.

In September 2010, Plaintiffs sent a letter to PNC Mortgage informing it that Plaintiffs were making a qualified written request to discover the beneficial owner(s) of the Plaintiffs' Note and Deed of Trust, pursuant to the Truth- in-Lending Act ("TILA") 15 U.S.C. § 1691. Compl. at ¶ 14. PNC Mortgage responded to the letter by informing Plaintiffs that a qualified written request must outline a specific dispute or discrepancy related to loan servicing and request investigation by the servicer or mortgagor. (Doc# 1-1 Ex. I). PNC Mortgage did not answer Plaintiffs' specific request, and instead attached the following documents in its letter to Plaintiffs: Origination Note, Origination Mortgage, Good Faith Estimate, HUD-1 Settlement

---

[1] The Court notes that Plaintiffs use the term "mortgage" in their Complaint to characterize PNC's interest in their property. However, the correct term for PNC's interest, as PNC states, is "Deed of Trust."

Statement, Truth-in-Lending Disclosure, Payment History, and Payment History Transaction Codes. (Doc# 1-1 Ex. I).

In October 2010, Plaintiffs sent a second letter to PNC Mortgage making a second qualified written request to disclose the name of the beneficial owner(s) of the Plaintiffs' Note and Deed of Trust. In response, PNC Mortgage sent Plaintiffs additional documentation that National City had become a part of PNC Bank. PNC Mortgage did not respond to Plaintiffs' specific request. (Doc 1-1 Ex. K).

Plaintiffs suspect that someone other than National City Mortgage and/or Freddie Mac now owns their promissory note, and that they remain legally obligated to an unknown note holder. Plaintiffs allege that the Deed of Trust constitutes a cloud on the title to their property, leading them to seek legal remedy by filing their claim in the Superior Court Division for the County of Watauga. Plaintiffs requested that the state court enter an order quieting title to Plaintiffs' property against the Defendant.

Following Plaintiffs' Complaint, PNC Bank filed a Notice of Removal on April 6, 2011 (Doc #1). PNC Bank asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' reliance on TILA constitutes a federal question. Additionally, PNC Bank asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332. In response, Plaintiffs filed a Motion to Remand the case, claiming the amount-in-controversy is not met.

## II. Analysis

The issue before this Court is the existence of subject matter jurisdiction. Any removed case lacking a basis for subject matter jurisdiction must be remanded to state court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998). The party seeking removal has the burden of

proving that subject matter jurisdiction exists. *Lovern v. Edward*, 190 F.3d 648, 654 (4th Cir. 1999). A defendant may remove a case to a federal district court if that court has original jurisdiction. 28 U.S.C. § 1441; *Dixon v. Coburg Dairy*, 369 F.3d. 811, 816 (4th Cir. 2004). Federal subject matter jurisdiction is created either by complete diversity of citizenship between adverse parties and an amount in controversy exceeding $75,000, *see* 28 U.S.C. § 1332, or a claim arising "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

1. *Federal Question Jurisdiction*

The "well-pleaded complaint rule" establishes that federal courts only have jurisdiction when a complaint correctly sets forth a federal question. *Coleman v. Beazer Homes Corp.*, No. 3:07cv312 2011 WL 1848653 at *3 (W.D.N.C. April 23, 2008). The Fourth Circuit has explained that a federal question is asserted when "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 607 (4th Cir. 2002) (internal quotation marks omitted). "A plaintiff, being the 'master of the complaint,' thus may avoid federal jurisdiction by exclusively relying upon state law." *Coleman*, 2011 WL 1848653 at *3 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Plaintiffs' Complaint does not specifically assert a cause of action under TILA and instead relies on North Carolina state laws quieting title. However, the Complaint suggests that the underlying basis of the Plaintiffs' attempt to quiet title is rooted in PNC's failure to respond to Plaintiffs' written requests pursuant to TILA.[2] Although Plaintiffs' state claim might implicate

---

[2] In Exhibit J, Plaintiffs letter to PNC Bank states that they have a legal right to rescind the mortgage pursuant to TILA, but Plaintiffs do not make such an assertion in their Complaint. Plaintiffs insist they

4

the federal statute, the "mere presence of a federal issue does not automatically confer federal jurisdiction." *Coleman*, 2011 WL 1848653 at *3 (internal citations omitted). The Supreme Court has cautioned that even when a state claim implicates a "substantial federal question, the exercise of federal jurisdiction is subject to a possible veto" if federal jurisdiction would not be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g and Mfg*, 545 U.S. 308, 313 (2005)).

The Western District of North Carolina has found that TILA "specifically includes provisions preserving a state court's enforcement of the disclosure requirements." *Coleman*, 2011 WL 1848653 at *5. "TILA's language indicates that Congress did not deem it important for federal courts to hear all cases that might raise TILA issues." *Id.* (citing *Evans v. Courtesy Chevrolet II, LP,* 23 F. Supp. 2d 669, 671 (S.D. Tex. 2006)). Thus, although PNC Bank asserts that Plaintiffs' state law claim implicates TILA, the Court is not confident that Plaintiffs seek to assert a TILA claim or base their state claim on a TILA violation. Since precedent establishes concurrent jurisdiction over state claims that implicate TILA, this Court declines to base subject matter jurisdiction on the alleged presence of a federal question.

*2. Diversity Jurisdiction*

Defendant PNC also contends that this Court has original jurisdiction based on diversity of citizenship. PNC is incorporated in the state of Pennsylvania with its principal place of

---

are seeking to quiet title based on North Carolina state laws, but provide no case law supporting this claim or any legal basis for their assertion.

business in Pennsylvania.[3] Ronald and Gail Susan Ruthfield are citizens of North Carolina. Neither party disputes that this case involves complete diversity of citizenship.

The central dispute between the parties concerns the amount-in-controversy. In actions for declaratory or injunctive relief, the amount-in-controversy is measured by the value of the object of the litigation.[4] *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In an action seeking to quiet title, "the amount in controversy is the value of the whole of the real estate to which the claim extends." *Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938). Because the Deed of Trust covers the entirety of the property, the amount-in-controversy is the market value of the house to which Plaintiffs are seeking to quiet title.

The Note and the Deed of Trust executed by Plaintiffs establish the value of the property.[5] *See Mapp v. Deutsche Bank Nat'l Trust Co.*, 2009 U.S. Dist. LEXIS 1000912*16 (M.D. Ala. Oct. 28, 2009) (noting the note and mortgage can establish that the fair market value of the

---

[3] The Court notes that it requested supplemental filings from PNC Bank to determine the location of PNC Bank's main office for the purpose of establishing the bank's citizenship. *Wachovia Bank v. Schmidt*, 545 U.S. 303 (2006) (holding that a national banking association is a citizen of the State in which its main office, as set forth in its articles of association, is located). In response, PNC Bank filed supplemental information reasserting its citizenship based on principal place of business and place of incorporation.

[4] Plaintiffs erroneously believe that because they did not request a monetary sum in their Complaint, there is no amount-in-controversy. Alternatively, Plaintiffs attempt to assert that PNC Bank's appearance in this action is based on a duty to indemnify National City and that a duty to indemnify should not be considered for jurisdictional purposes. The Court finds this argument irrelevant because the relationship between PNC Bank and National City is the result of a merger rather than an insurance agreement. The determination of the amount-in-controversy is unaffected by Plaintiffs' argument.

[5] Plaintiffs assert that the current value of their mortgage is approximately $20,000-$25,000. They base this approximation on their belief that securitized mortgages and pools of mortgages are being sold to the Federal Deposit Insurance Corporation (FDIC) on a weekly basis because of the financial failure of banking institutions. Plaintiffs assert that the FDIC is selling these securitized mortgages and pools of mortgages for pennies on the dollar and in many cases with an 80% guarantee against the purchaser losses. Thus, Plaintiffs' estimate is an approximation based on these correlative factors, rather than the actual market-value of the property.

property is greater than the jurisdictional requirement).⁶ The principle amount of Plaintiffs' Note is $225,800.00. Compl. ¶ 7, Ex. C. Thus, the amount in controversy exceeds the jurisdictional requirement of greater than $75,000 and this Court has jurisdiction over this case.

Although the Court has determined that it has original jurisdiction, the Court would like to emphasize that it is not satisfied that an actual case or controversy has been presented in the pleadings. Because *pro se* complaints must be liberally construed, the Court is hesitant to dismiss the case *sua sponte* at this point in the litigation. However, the pleadings leave the Court uncertain as to the legal basis of Plaintiffs' claim to quiet title. Plaintiffs should note that "[t]hough [pro se] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Fisher v. Chase Home Fin., LLC,* No. 3:11 CV202-HEH, 2011 WL 2268474, at *3 n.6 (E.D.VA. June 7, 2011) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985)).

### III. Conclusion

**THEREFORE, IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand is **DENIED.**

Signed: August 1, 2011

Richard L. Voorhees
United States District Judge

---

⁶ The Court notes that this method of valuation is not inconsistent with the Fourth Circuit's ruling that "the jurisdiction is not affected by the amount of the *outstanding* mortgage," referring to the current outstanding balance of the original indebtedness. *Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938) (emphasis added).